IN THE UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF ILLINOIS
SPRINGFIELD DIVISION

| | | |
|---|---|---|
| Gary Hicks, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No.    20-cv-3099 |
| | ) | |
| Illinois Department of Corrections, Michelle Neese, Josh Yargus, and Rob Jeffreys, | ) ) ) | |
| | ) | |
| Defendants. | ) | |

## First Amended Complaint[1]

Now Comes the Plaintiff, Gary Hicks ("Hicks"), by and through his undersigned counsel, John A. Baker, and in support of his first amended complaint against the Defendants, Michelle Neese, Rob Jeffreys, John Eilers, Josh Yargus, and Nikki Robinson, states as follows:

### I. Jurisdiction and Venue

1. This lawsuit alleges that the DOC and the individual defendants have violated Hicks' rights under the First and Fourteenth Amendments to the United States Constitution.

2. Through this lawsuit Hicks is, in addition to damages, seeking equitable and/or injunctive relief. He also seeks damages for injuries that he has sustained and punitive damages.

3. Hicks's claims all raise federal questions which vests this Court with jurisdiction

---

[1] This amendment is intended to serve a couple of purposes. First, it identifies John Eilers and Nikki Robinson as defendants. Second, it eliminates Count III of the lawsuit.

1

under 28 U.S.C. § 1331.

4. The dispute in this lawsuit all occurred within the State of Illinois. Many of the actions and decision raised in this complaint occurred in Springfield, Illinois. As such, venue is appropriate in the Central District of Illinois.

## II. Parties

5. Hicks was formerly employed as a Correctional Sergeant by the DOC at its Robinson Correctional Center.

6. Michelle Neese was, at all times relevant to these proceedings, employed by the DOC as the Acting Warden at the Robinson Correctional Center. She is named in this complaint in both her official and personal capacities. She is named in her personal capacity for the purpose of damages and in her official capacity for the purpose of equitable relief.

7. Robinson was, at all times relevant to these proceedings, employed by the DOC as Deputy Director of the Department. She is named in her individual capacity and for the purpose of implementing equitable relief in her official capacity.

8. Jeffreys was, at all times relevant to these proceedings, the Acting Director of the DOC. He is named in this complaint in both his official and personal capacities. He is named in his personal capacity for the purpose of damages and in his official capacity for the purpose of equitable relief.

9. Yargus was, at all times relevant to this proceeding, employed by the DOC as an internal investigator. He is named in his individual capacity.

10. Eilers was, at all times relevant to this proceeding, employed by the DOC as a

Deputy Director.  He is named in his individual capacity and in his official capacity for the limited purpose of equitable relief.

### III.  Complaint[2]

11.     Hicks was employed as a Correctional Sergeant by the DOC at its Robinson Correctional Center until his retirement.

12.     Hicks has a personal Facebook page.

13.     Posting on Facebook is not a part of Hicks' job and he does not do so while he is working for the DOC.  Hicks' Facebook activities occur on his own time and from his own personal electronic devices.

14.     On May 20, 2019, while on personal time, from his own personal computer, Hicks posted a meme to his personal Facebook page.  That meme had a picture of U.S. Representative Ilhan Omar and contained the following language:

```
Musslamic Democrat, Ilhan Omar, has threatened Members
of Congress.  She's told several Republicans that
she'll send them "shawarma," to give them a taste of
her culture.  Share to say arrest her now!
```

(App. 1).

15.     On May 22, 2019, while on personal time, from his own personal computer, Hicks posted the following to his personal Facebook page:

```
Dear Lord, if there must be a civil war or a government
overthrow, please let it happen before I am dead or too
```

---

2     Attached to Hicks' original complaint was an appendix of documents.  These documents were identified with a batestamp of "Gary Hicks Appendix ___."  All references to these documents in this complaint are identified as "App.___." The appendix has already been filed with the original complaint and is incorporated by reference herein.

> old to fight in it.  Amen.

(App. 2)

    16.    On July 6, 2019, while on personal time, from his own personal computer, Hicks posted the following to his personal Facebook page:

> The Devil is a liar . . Abortion is Murder, Homosexuality is Sin, and Allah is not God!

(App. 3).

    17.    On July 24, 2019, while on personal time, from his own personal computer, Hicks posted a meme to his personal Facebook page.  That meme had a picture of U.S. Representative Rashida Tlaib and contained the following language:

> Mexican word of the day: Tlaib.  If you don't like the USA you are welcome Tlaib.

(App. 4)

    18.    At some point during the summer months of 2019, while on personal time, from his own personal computer, Hicks posted a meme to his personal Facebook page. That meme did not contain images, however, contained the following wording:

> Things we Don't See Jews Doing:
>
> 1. Flying Planes Into Buildings.
>
> 2. Supporting Terrorism.
>
> 3. Forcing Young Girls to Marry Old Men.
>
> 4. Mutilating Females Genitalia.
>
> 5. Beheading People.

      6.    Trying to Dominate the World.

      7.    Stonings.

      8.    Canings.

      9.  Lashings.

      10.   Trying to Destroy America.

(App. 5).

19. The Facebook postings described above were neither made at work nor were they in any fashion related to Hicks' work with the DOC.

20. In none of the Facebook postings described above did Hicks identify himself as being employed by the DOC.

21. Hicks did not indicate that he was speaking on behalf of the DOC in making the Facebook postings described above.

22. On September 3, 2019, Hicks was interviewed by Josh Cheek, an investigator from the DOC. During that interrogation Hicks admitted to making the Facebook postings identified in paragraphs 12-16. Hicks also advised that these were his personal political and religious views and that his views has never impacted his work for the DOC and that he has never been biased against anyone in carrying out his workplace duties.

23. On September 3, 2019, Hicks was locked out of the Robinson Correctional Center owing to an investigation into his Facebook postings. The directive to lock Hicks out of the facility was made by Eilers and Robinson and signed off on by Neese.

24. Josh Yargus, in conjunction with Eilers, Jeffreys, and others, made a finding that

Hicks' Facebook comments violated IDOC policy.

25. On October 3, 2019, Joshua Yargus was told to make a recommendation to Neese that Hicks be referred for disciplinary action as a result of the posts identified in paragraphs 12-16.  In his memorandum making that recommendation he stated that the internal affairs investigation had concluded and found that:

> . . . Correctional Sergeant Gary Hicks violated Conduct of an Individual when he made a post on his Facebook account in which he shared "memes" to reflect his personal views on topics of a political or religious nature that reflected negatively on the Department as well as the Department's overall mission.

(App. 7)

26. Neese concurred with the directive that Hicks be disciplined for his Facebook posts (App. 7).

27. On October 3, 2019, Hicks was notified via memorandum from Neese that a pre-disciplinary hearing would be held on October 15, 2019, and that Sarah Venema would be the hearing officer (App.  6).

28. On October 15, 2019, an administrative review hearing was held before Venema. She found that Hicks' memos violated DOC policy and recommended that he be suspended for a period of ten days.

29. Neese believed it was appropriate for Hicks to be suspended for the Facebook postings identified in paragraphs 12-16 and she approved the recommendation that he be suspended for 10 days.  She forwarded that recommendation to the DOC Director's office.

30.     On or about October 20, 2019, Eilers, in conjunction with Jeffreys, Robinson, and others made the decision that Hicks would be suspended without pay for a period of ten days for his Facebook postings that are described in paragraphs 12-16.

31.     The stated justification for Hicks' suspension was that he had violated both the DOC's Standards of Conduct, Administrative Directive 03.02.108 (App. 6-14) and Institutional Directive 03.02.108 (App. 15-29).[3]

32.     Administrative Directive 03.02.108, as it existed in May, June, July, and August of 2019, contains nothing that would specifically preclude an employee from posting anything on social media (App. 6-14). Indeed, it doesn't mention social media.

33.     The portion of Administrative Directive 03.02.108 that was utilized to discipline Hicks provides:

```
The Department shall require employees to conduct
themselves in a professional manner and, whether on
duty or not, not engage in conduct unbecoming of a
State employee or that may reflect unfavorably on or
impair operations of the Department.
```

(App. 6).

34.     Like the Administrative Directive, Institutional Directive 03.02.108, as it existed in May, June, July, and August of 2019, contains nothing that would specifically preclude an employee from posting anything on social media (App. 15-29). Indeed, it doesn't mention social

---

3   The versions of these policies that appear in Hicks' appendix are those that were in effect between May 1, 2019 and October 20, 2019.

media.

35. The portion of Institutional Directive 03.02.108 that was utilized to discipline Hicks provides:

```
It is the policy of the Robinson Correctional
Center to require all employees to conduct
themselves in a professional manner and, whether
on duty or not, not engage in conduct unbecoming
of a State employee or that may reflect unfavorably
on or impair operations of the Department. Failure
to comply with any of the standards of conduct may
result in discipline.
```

(App. 15).

36. After Hicks was disciplined, the DOC issued a new policy that was authorized by Jeffreys. That policy became effective on November 1, 2019, and it outlines the DOC's policies regarding social media. A copy of that policy is included in the appendix (App. 30-32).

37. As a result of his suspension and his lock out Hicks has sustained both financial and emotional damages.

38. Prior to his discipline that is outlined in this complaint Hicks had not been disciplined in more than 18 years of employment with the DOC.

39. Hicks had always been considered to be a valued employee of the DOC.

40. Hicks' discipline continued to impact Hicks while he remained employed by the DOC. He did not post political and/or religious materials on Facebook for fear that it will violate DOC policies. In this sense, both the discipline and the new policy restricted his rights under the First Amendment.

## Count I
*First Amendment Retaliation as to Neese, Yargus, Robinson, Eilers, and Jeffreys*

41. Paragraphs 1-40 are incorporated herein.

42. The Facebook postings made by Hicks as described above were protected speech under the First Amendment.

43. The sole reason for the discipline that Hicks received was because of the Facebook postings described above.

44. As a result, Hicks' discipline constitutes an impermissible violation of his rights under the First Amendment.

45. Hicks has suffered damages as a result.

46. Hicks asks that this Court issue the following orders:

   A. A finding that the decision to discipline him for his Facebook postings constitutes an infringement of his rights under the First Amendment.

   B. An order directing that Neese, Robinson, Eilers, and Jeffreys permanently remove the discipline from Hicks' personnel file.

   C. Order that Neese, Yargus, Robinson, Eilers, and Jeffreys pay Hicks damages for his lost wages and other damages that he has sustained.

   D. Enter an order that Neese, Yargus, Robinson, Eilers, and Jeffreys must pay Hicks' attorney fees and costs associated with bringing this lawsuit.

   E. Order that Hicks be awarded punitive damages.

   F. Any other relief that is appropriate.

## Count II

*Fourteenth Amendment Due Process Violation as to Neese, Yargus, Robinson Eilers, and Jeffreys*

47. Paragraphs 1-40 are incorporated herein.

48. Hicks was disciplined because of policies maintained by the DOC that, in general, preclude an employee from engaging in conduct that reflects unfavorably upon it.

49. As applied in this situation, those policies were too vague to put Hicks on notice that he could be disciplined for posting comments of this nature on Facebook.

50. Disciplining Hicks as they did, Neese, Yargus, Robinson, Eilers, and Jeffreys violated his rights under the Fourteenth Amendment.

51. Hicks has suffered damages as a result.

52. Hicks asks that this Court issue the following orders:

A. A finding that the decision to discipline him for his Facebook postings constitutes an infringement of his rights under the Fourteenth Amendment.

B. An order directing that Neese, Robinson, Eilers, and Jeffreys permanently remove the discipline from Hicks' personnel file.

C. Order that Neese, Eilers, Jeffreys, Yargus, and Robinson pay Hicks damages for his lost wages and other damages that he has sustained.

D. Enter an order that Neese, Eilers, Yargus, Eilers, and Jeffreys must pay Hicks' attorney fees and costs associated with bringing this lawsuit.

E. Order that Hicks be awarded punitive damages.

F. Any other relief that is appropriate.

**Many claims in this case raise legal issues.  For all matters for which a jury is allowable Hicks is requesting that those matters be tried by a jury.**

Gary Hicks

By: */s/ John A. Baker*
His Attorney

Dated: SEPTEMBER 28, 2021

John A. Baker
Baker, Baker & Krajewski, LLC
415 South Seventh Street
Springfield, Illinois 62701
Telephone:    (217) 522-3445
Facsimile:     (217) 522-8234
E-mail: jab@bbklegal.com